UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KATELYN P.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:24-cv-2145-MJD-JRS |
| | ) |
| FRANK BISIGNANO, COMMISSIONER | ) |
| OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant Katelyn P. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Act. *See* 42 U.S.C. § 1382. For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

**I. Background**

Claimant applied for SSI in January 2021. [Dkt. 9-5 at 2.] Her application was denied initially and upon reconsideration, [Dkt. 9-4 at 9, 17], and Claimant then requested and was granted a hearing before an Administrative Law Judge ("ALJ"), which was held before ALJ Deanna Sokolski on February 25, 2022. [Dkt. 9-2 at 36.] On June 17, 2022, ALJ Sokolski issued her determination that Claimant was not disabled. [Dkt. 9-2 at 16.] The Appeals Council

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

then denied Claimant's request for review on October 29, 2022. *Id.* at 2. Claimant appealed that decision; that appeal resulted in a joint motion for remand being granted and the case being remanded for further proceedings on March 16, 2023. [Dkt. 9-10 at 42.]

On remand, on September 29, 2023, the Appeals Council remanded the case to an ALJ for further proceedings. [Dkt. 9-10 at 49.] A second hearing was held before ALJ Kevin Walker on April 23, 2024. [Dkt. 9-9 at 38.] ALJ Walker then entered his decision again denying Claimant's application on August 7, 2024. [Dkt. 9-9 at 5.]

Claimant filed her Complaint on December 5, 2024, seeking judicial review of ALJ Walker's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 1382c. Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step

three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 416.920(a)(4). Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). If, at any step, the ALJ can make a conclusive finding that the claimant either is or is not disabled, then she need not progress to the next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

The Seventh Circuit recently set forth the proper standard of review in an appeal of the denial of disability benefits as follows:

> [W]e review the ALJ's decision deferentially, affirming if its conclusions are supported by substantial evidence. 42 U.S.C. § 405(g); *Deborah M. [v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021)]; *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) (ALJ's residual functional capacity determination "must be supported by substantial evidence in the record"). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S.Ct. 1148, 203 L.Ed.2d 504 (2019), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). While we do not reweigh evidence, we conduct a critical review because a decision "cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). In addition, an ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. That logical bridge can assure a reviewing court that the ALJ considered the important evidence and applied sound reasoning to it. See *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999).

*Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025). This is the standard the Court will apply in this case.

### III.  ALJ Decision

ALJ Walker first determined that Claimant had not engaged in substantial gainful activity since the application date of January 13, 2021. [Dkt. 9-9 at 7.] At step two, the ALJ found that

Claimant had the following severe impairments: "migraines, asthma, attention deficit hyperactivity disorder (ADHD), anxiety, depression, and posttraumatic stress disorder (PTSD)." *Id*. At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 8. The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform medium work as defined in 20 CFR 416.967(c) except she is able to understand, carry out, and remember simple, routine, and repetitive tasks. She is able to make work related decisions and sustain concentration on short, simple tasks for two hours at a time over an eight-hour workday. She requires a position with set routine and procedures and few changes during the workday. She can tolerate occasional interaction with supervisors, coworkers, and the public. She can have no exposure to concentrated wetness or humidity. She can tolerate occasional exposure to pulmonary irritants including dusts, fumes, odors, and gases. She can have no exposure to unprotected heights or hazardous machinery. She cannot operate motor vehicles. With the left upper extremity, she can frequently reach and handle. She can tolerate moderate noise exposure as defined by the SCO and DOT. She cannot work at production rate pace or meet strict quota production requirements but can meet all end-of-day goals.

*Id.* at 10.

At step four, the ALJ found that Claimant had no past relevant work during the relevant time period. *Id*. at 15. At step five, relying on testimony from a vocational expert ("VE"), the ALJ determined that Claimant was able to perform jobs that exist in significant numbers in the national economy, such as floor waxer, laundry worker, housekeeping cleaner, routing clerk, and hand packager. *Id*. at 16. Accordingly, the ALJ concluded Claimant was not disabled. *Id.*

### IV.  Discussion

Claimant raises several issues with the ALJ's decision. First, she argues that the ALJ's evaluation of her subjective symptoms is deficient and requires remand. The Court agrees.

When assessing a claimant's subjective symptoms, an ALJ must complete a two-step process. First, the ALJ must "consider whether there is an underlying medically determinable

4

physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *3. Here, the ALJ found that there are such impairments. [Dkt. 9-9 at 11.] Second, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established," the ALJ will "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p at *3. The ALJ will not evaluate an individual's symptoms based solely on objective medical evidence unless the objective medical evidence supports a finding that the claimant is in fact disabled. *Id.* at *4-5. The ALJ will consider factors including, but not limited to, the claimant's daily activities and the effectiveness of the claimant's medication or treatment. *Id.* at *7-8.

Here, the ALJ concluded that "[a]s for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because they are not supported by objective medical evidence or other evidence." [Dkt. 9-9 at 11.] The ALJ then summarized the evidence of record in some detail. The ALJ then recognized that "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone" and "examined the claimant's statements regarding the factors listed in 20 CFR 416.929(c)(3)." As to those factors, the ALJ first stated the following:

> The claimant has described fairly limited daily activities. However, at certain points in the record, she admits to more abilities than she alleges. Again, the claimant is capable of at least some cooking, cleaning, and shopping, is able to care for her personal needs, and is able to function independently and take care of her own basic needs. These daily activities are not as limited as one would expect given the claimant's complaints of disabling symptoms and limitations. In addition, as mentioned earlier, the record reflects work activity after the alleged

5

> onset date. Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate the claimant's daily activities have, at least at times, been somewhat greater than she has generally reported.

[Dkt. 9-9 at 13.] It appears from this statement that the ALJ believed that Claimant intentionally minimized her description of her daily activities, presumably at the hearing. Claimant testified at the hearing that she does some cleaning, "but usually it isn't much that I can clean" and that she does laundry. [Dkt. 9-9 at 69.] Claimant testified that she was "afraid to do the dishes" and that her mother did the grocery shopping, but that she liked to go with her parents when they go out shopping or other places. *Id.* The ALJ does not explain, and the Court is unable to discern from the record, how Claimant's testimony at the hearing is contradicted by other evidence in the record regarding her ability to carry out daily activities. The ALJ does not explain what he means by "function independently" or where in the record he found support for the finding that Claimant is able to function independently. The ALJ also does not explain how the ability to do "at least some cooking, cleaning, and shopping, [] care for her personal needs, and [] function independently and take care of her own basic needs" is inconsistent with the claim that her symptoms prevent her from performing full-time work. Finally, with regard to Claimant's work activity, her testimony was that she had to quit working because she experienced "more and more frequent" panic attacks when she tried to work; it is difficult to see how Claimant's failed attempts at working part-time is evidence that her symptoms are not as severe as she alleges.

Next, the ALJ stated "I generally find the claimant's description of the location, duration, frequency, and intensity of her symptoms unpersuasive as they are generally unfounded elsewhere in the record." [Dkt. 9-9 at 13.] The ALJ then gave several examples of why he believed Claimant's subjective symptoms allegations were "unfounded." First, the ALJ stated that "[Claimant] alleges debilitating migraines. However, she has had normal neurology exams

6

and improvement with medication.  On several occasions, she said she was very happy with her medications and that they worked well (Exhibits B1F at 1-6; B17F at 103-105, 205-207)." *Id.*  It is entirely unclear how "normal neurology exams" are relevant to the question of how often Claimant suffered from migraine headaches and how severe those headaches were.  While it is true that Claimant stated that her migraine medications were working well in two of the records cited by the ALJ, those records were from February 2022 and February 2023.  *See* [Dkt. 9-15 at 104] (Ex. B17F at 103); [Dkt. 9-16 at 97] (Ex. B17F at 205).[2]  In between the February 2023 visit and the April 2024 hearing, Claimant returned to her neurologist complaining of an "increase in frequency and intensity of her migraine headaches."  [Dkt. 9-17 at 78] (notes from December 7, 2023).  The ALJ does not acknowledge that fact or the fact that a migraine medication might work well at first and then grow less effective over time.  In other words, the ALJ does not explain how the fact that Claimant's migraine medication was working well in February 2022 and February 2023 renders her April 2024 testimony regarding her migraine symptoms "unfounded," especially in light of the intervening neurology visit in which she complained of worsening migraine symptoms.

---

[2] The ALJ also cites to Exhibit BF1at 1-6.  Those records are from March and April 2021.  In March 2021, Claimant was first prescribed medication (gabapentin) for migraines by her primary care physician and was referred to a neurologist.  [Dkt. 9-7 at 6] (Ex. B1F at 6).  At a follow-up visit the following month, Claimant's primary care physician reported that Claimant's migraine headaches had "lessened on gabapentin" and that Claimant was waiting for an appointment with a neurologist, which was scheduled for July 2021. [Dkt. 9-7 at 4] (Ex. B1F at 3).  At that appointment, the neurologist noted that Claimant's migraines were occurring "with increasing frequency and intensity over the past several months" and prescribed Nurtex ODT as an abortive medication for migraines.  [Dkt. 9-7 at 188.]  These notes do not suggest that Claimant was "very happy with her medications and that they worked well," but rather that she obtained some relief from gabapentin but needed an additional medication to help manage her migraines.

Next, the ALJ states: "[Claimant] also alleges asthma, though her treatment notes show it is well controlled with medication (Exhibits B1F at 7-10; B15F at 10; B17F at 103-105, 205). Further, she has not required any treatment for acute asthma exacerbations." [Dkt. 9-9 at 13.] Claimant does not "allege asthma"; Claimant has asthma and has been diagnosed and treated for asthma consistently. The only testimony at the hearing regarding Claimant's asthma is that she uses an inhaler twice every day and that she had also used a rescue inhaler about five times in the past month. [Dkt. 9-9 at 64.] It is unclear how that testimony, or anything else in the record regarding Claimant's asthma, is inconsistent with the ALJ's conclusion that her asthma is "well controlled with medication." In other words, the ALJ seems to assert that Claimant has made allegations regarding her asthma symptoms that are inconsistent with the record as a whole, but he does not explain what those allegations are or where Claimant made them.

Next, the ALJ states:

> In addition, [Claimant] alleges many symptoms of ADHD, anxiety, depression, and PTSD. However, her treatment notes and objective exams show many normal findings and improvement with medication and therapy. . . . She also alleges difficulty with concentration and focus. While her therapy notes do describe her as distracted at times, it was usually because she was on her phone (Exhibits B10F at 57, 72, 76, 93; B13F at 19). Notably, her behavioral health and psychiatric exams showed good attention and concentration (Exhibits B2F at 11, 13, 15, 17, 20; B5F at 3-5; B7F at 31-32; B10F at 61-62).

[Dkt. 9-9 at 13, 14.] It goes without saying that the fact that there are "many normal findings" in Claimant's records does not negate the fact that there are also many abnormal findings. *See* [Dkt. 9-10 at 50] (Appeals Council remand order noting that "showing some improvement does not negate the claimant's significant ongoing abnormalities on mental status examinations."). With regard to Claimant's allegations of difficulty with concentration and focus, the state agency psychologists found that Claimant is moderately limited in her ability to maintain attention and

8

concentration for extended periods, [Dkt. 9-3 at 16], and the ALJ found that she had a moderate limitation in concentrating, persisting, or maintaining pace, [Dkt. 9-9 at 9], so the ALJ apparently agreed that she had some degree of difficulty with concentration and focus. As with asthma, the ALJ implies that Claimant somehow exaggerated her problems with concentration and focus but in no way explains how that is the case.

    Next, the ALJ stated the following:

> While [Claimant] alleges difficulty with hygiene, her treatment notes seem to indicate this was more of an issue of routine, lack of knowledge, and lack of resources rather than a symptom of mental health (Exhibits B10F at 28, 90, 121; B16F at 8). Her hygiene routine improved with help from her therapist (Exhibits B13F at 15; B16F at 13).

[Dkt. 9-9 at 13-14.] The records cited by the ALJ do not support his conclusion that Claimant's hygiene issues were not related to her mental impairments. On the contrary, the records state that the therapist "provided psychoeducation on the impact of [a hygiene] routine and consistency with mental health symptoms increasing when stressors increase and not getting [Claimant's] basic needs met." [Dkt. 9-8 at 91.] The same record indicates that claimant understood the hygiene routine and was able to explain how to complete it, but nonetheless Claimant "appeared disheveled upon arrival and reported that they shower daily and wear new clothes daily, however that is not evidence in appearance." *Id.* And while the ALJ is correct that the record indicates that her hygiene routine improved with therapy, those records indicated "some improvement" toward a goal of "complet[ing] hygiene at least 4 out of 7 days a week"; they do not indicate that Claimant no longer had any issues with hygiene.

    Next, the ALJ stated that "[w]ith regard to hallucinations, while [Claimant] did report some as distressing at a few visits between February 2022 and April 2022, she said they did not bother her on many occasions. She also denied hallucinations at times." [Dkt. 9-9 at 14]

9

(citations omitted).  The import of this statement is unclear.  Does the ALJ mean that Claimant lacks credibility because she has said different things about hallucinations at different times?  If so, there is no medical evidence in the record suggesting that Claimant's reports of hallucinations to her mental health providers were not genuine or that they were suspect because they waxed and waned and took on different characteristics.  And, as the Appeals Council noted in its remand order, "reporting hallucinations at some visits and not at others and showing some improvement does not negate the claimant's significant ongoing abnormalities on mental status examinations."  [Dkt. 9-10 at 50.]

Finally, with regard to the panic attacks experienced by Claimant, which she identified at the hearing as the reason her attempts to work were unsuccessful, the ALJ stated "[Claimant] also alleges frequent panic attacks but often denied them to her doctors and said her medication worked well.  Her therapy notes also show a decrease in anxiety/panic with use of positive thoughts."  [Dkt. 9-9 at 14] (citations omitted).  This, of course, reads as if Claimant told her doctors one thing and then told the ALJ another.  But the ALJ's own summary of the medical evidence demonstrates that Claimant's medical records show a pattern of the frequency and severity of her panic attacks increasing and decreasing and then increasing again, necessitating medication changes at times.  *See* [Dkt. 9-9 at 12-13].  This pattern is consistent with serious mental illness, which tends not to improve in a linear fashion, but instead waxes and wanes over time due to changes in medication, therapy, environment, stress, and myriad other factors.  As the Seventh Circuit has recognized, "[a] person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days."  *Bauer v. Astrue,* 532 F.3d 606, 609 (7th Cir. 2008); *see also Larson v. Astrue,* 615 F.3d 744, 751 (7th Cir. 2010) (noting that "symptoms that 'wax and wane' are not

inconsistent with a diagnosis of recurrent, major depression").  The ALJ does not explain how variations in Claimant's reported panic attack symptoms over time conflict with her allegation that when she tried to work—that is, do something outside of her routine—she experienced panic attacks that made her unable to continue doing so.

>The Commissioner correctly notes in his brief that
>
>An ALJ's evaluation of a claimant's subjective claims is due special deference—particularly where, as here, he heard the claimant testify.  *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013); *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008); *Kelley v. Sullivan*, 890 F.2d 961, 964 (7th Cir. 1989).  The ALJ's findings must be upheld unless they were "patently wrong," a standard which allows the court to overturn a decision only when it lacked "any explanation or support."  *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

[Dkt. 14 at 4.]  But it is not enough for an ALJ to give an explanation; that explanation must be supported by the record and it must actually support the ALJ's conclusion.  As set forth in detail above, that is not the case here.  Remand is thus required.  To make this finding is not, as suggested by the Commissioner, to improperly "reweigh" the evidence; it is to point out that the ALJ failed to satisfy his obligations under the applicable law to comply with the requirements set forth in the agency's own rulings and to "rest his denial of benefits on adequate evidence contained in the record and [] explain why contrary evidence does not persuade." *Berger*, 516 F.3d at 544.

Because remand is required based on the ALJ's unsupported subjective symptoms analysis, the Court need not address Claimant's other arguments at length.  However, the Court notes that the ALJ's deficient analysis of the effects of Claimant's panic attacks on her ability to work is also highly relevant to his evaluation of the "paragraph C criteria" at step three, which Claimant also alleges was erroneous. The ALJ's entire analysis is as follows:

> I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The evidence fails to show marginal adjustment or minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life despite ongoing medical treatment and mental health therapy that diminishes the symptoms and signs of her mental disorder. At the hearing, Dr. Heath specifically noted the elements of the paragraph C criteria are not met.

[Dkt. 9-9 at 10.] To be frank, Dr. Heath's testimony was largely equivocal and at times unintelligible. In addition, under questioning by Claimant's attorney, Dr. Heath stated that he "wouldn't put up a hard argument" against the attorney's suggestion that there was, in fact, evidence in the record that would support finding that the paragraph C criteria were satisfied. [Dkt. 9-9 at 54.] On remand, the ALJ shall conduct a more careful analysis of whether the paragraph C criteria are satisfied that does not rely on Dr. Heath's equivocal testimony and takes into account the reassessment of the subjective symptoms analysis.

## V. Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED and REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated: 26 FEB 2026

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.